UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JAMES FORD and BOBBY GRAHAM,

    Plaintiffs,

v.

RICKY DIXON in his Official Capacity, and SGT. STEPHENS and OFCR JOYNER, individually,

    Defendants.

CASE NO. 3:21-cv-932-LC-HTC

**PLAINTIFF'S RESPONSE TO THE SECRETARY'S
MOTION TO DISMISS THE AMENDED COMPLAINT**

Plaintiffs, JAMES FORD and BOBBY GRAHAM respond to the Motion to Dismiss the Amended Complaint of February 28, 2022 (ECF 28), pursuant to Fed.R.Civ.P. 12(b)(6) and 4(m) by Defendant RICKY DIXON, and would show:

1. Defendant RICKY DIXON contends as follows:

   a. Plaintiffs failed to serve Defendant within 90 days of filing.[1]

   b. Plaintiffs have not stated a claim on which relief can be granted.

   c. Defendant raises no other issues as to the operative complaint.

2. Plaintiffs will respond below that the Court's Ruling deeming the Summons and Complaint timely served (ECF 23) should stand and that shortcomings in the amended pleadings, if any, can be cured by further amendment.

---

[1] Secretary Dixon acknowledges the Court's Order of February 8, 2022 (ECF 23), deeming the Summons and Complaint timely served but re-asserts the argument so as not to abandon it.

1

**MEMORANDUM OF LAW**

Defendant moves for dismissal under Fed.R.Civ.P. 12(b)(6) and 4(m). The Secretary continues to maintain that Plaintiffs' pleadings are fatally "vague." (ECF 28 at 22, 25). To the extent the operative complaint is insufficiently or inartfully pled, Plaintiffs will seek leave to further amend to overcome any such defects.

Motions to dismiss are disfavored. "A motion to dismiss on the basis of the pleadings alone should rarely be granted." *See, e.g., Universal Collision Center Inc. v. Travelers Ind. Co. of Conn.*, 2010 WL 2015242, at *1 (N.D. Fla. 2010) (*citing Madison v. Purdy*, 410 F.2d 99, 100 (5th Cir. 1969) "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); see also id. at 679 ("a complaint that states a plausible claim for relief survives a motion to dismiss"). To meet this "plausibility standard," the plaintiff must plead sufficient facts to permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. The Federal Rules of Civil Procedure Rule 8(a) requires a "short and plain statement" showing that plaintiff is entitled to relief — "enough to raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555; accord, e.g., Iqbal, 556 U.S. at 678 (noting that Rule 8(a) does not require "detailed factual allegations"). Iqbal

2

also makes clear that there is no heightened pleading standard under 42 USC § 1983. *See Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010). In reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See, e.g., Brooks v. Blue Cross & Blue Shield of Fla. Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

### A. Plaintiffs State a Cause of Action Against the Secretary for Failure to Protect (Injunctive Relief) and ADA/RA Failure to Accommodate.

Plaintiffs state a cause of action against Secretary Dixon. Defendant aptly states that an agency head in his or her official capacity cannot be sued on a theory of *respondeat superior*. *Monell v. Department of Social Services*, 436 U.S. 658 (1978). But an agency head in his or her official capacity can be liable for a civil rights violation under the kind of vicarious liability expressed in *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 118 S.Ct. 1989 (1998), by the acts of "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [organization's] behalf [and who] has actual knowledge of discrimination in the [organization's] programs and fails adequately to respond." *Gebser*, 524 U.S. at 290, 118 S.Ct. 1989, *cited by Liese v. Indian River County Hosp. Dist.*, 701 F.3d 334, 349 (11th Cir. 2012). In this case, it would appear to be the agency rulemaking authority that sets disciplinary standards by which inmates found in unauthorized areas are disciplined but the officers who grant them admission are not. Further, administrators who fail to take advantage of

3

the opportunity to employ devices like wristbands to show when inmates don't belong in a particular housing area also have, but do not use, the power to institute corrective measures in response to known violations.

It is also *generally* true that a single constitutional violation is insufficient to prove a policy or custom. *Craig v. Floyd Cty., Ga.*, 643 F. 3d 1306, 1311 (11th Cir. 2011), and that the Eleventh Circuit has stated that "[t]o establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice." *Id*. But it is not invariably true. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) ("[M]unicipal liability can be imposed for a single decision by municipal policymakers under appropriate circumstances.").

B. **Secretary Dixon is the Proper Party in an Action for Injunctive Relief under the *Ex Parte Young* Exception to Eleventh Amendment Liability.**

The Secretary of the Florida Department of Prisons is the proper party for a count seeking injunctive relief. Lonergan v. Fla. Dep't of Corr., 623 F. App'x 990, 992 (11th Cir. 2015). Defendants argue that Plaintiffs cannot bring the subject § 1983 claims for injunctive relief against Secretary Dixon, "as such claims do not fall under an exception to waiver of Eleventh Amendment immunity." (ECF 28 at 17). Defendants admit that an exception does exist under *Ex parte Young*, 209 U.S. 123 (1908) where the complaint alleges an ongoing violation and seeks relief properly characterized as prospective. *Id*. at 255. But that is exactly what Plaintiffs do. The circumstances pled have not abated and the threat of harm continues.

4

### C. Failure to Hold Corrections Staff Accountable for Allowing Inmates to Enter Unauthorized Areas Accommodates Gang Criminal Activity.

Here, the Agency, through its chief executive, maintains a policy that while prisoners violate Department of Corrections rules and are subject to discipline for being in an unauthorized area, corrections staff suffer no discipline for *allowing* prisoners in an unauthorized area, such as a housing area where they do not reside. 33-208.003 FAC. Plaintiffs can show through discovery that this policy has resulted in significant numbers of sexual assaults, robberies, extortions and murders throughout the Department of Corrections and has done for years.

Dormitory staff have to "pop the door" to admit inmates to a residential area, Officials say due to staffing shortages, there are not enough dormitory officers to keep track of whether a particular inmate entering a residential area actually lives there. Some individual institutions have issued colored bands to show where an inmate belongs but that is not the policy of the Department as a whole and it appears most institutions simply ignore the problem.

Importantly, sometimes the officers who admit inmates into unauthorized housing areas, as here, do so to assist the practice of "fishing" – seeking out vulnerable inmates to attack and rob of their property. That requires officers to admit the predatory inmates – usually in small groups – to cruise a housing area and grab what they want, and then permit them to leave after an act of violence. Here, the officer actually watched the robbery occur and let the gang out.

### D. Vulnerable Inmates, Including Disabled Inmates, Are the Most Frequent Victims of Predatory Bands That "Fish" in Dormitories

Of all the inmates who fall prey to predatory gang members, the most vulnerable are disabled inmates – mobility impaired, visually impaired, hearing impaired, and cognitively impaired. In addition to being less strong and agile than other inmates, they are often loners who can be picked off. They are not as able to guard their property and not as likely to be part of groups that look out for and defend each other. For these inmates, dormitory officers who are vigilant and honest are their only protection. This is a problem that is decades old.

Plaintiffs believe that with vigorous discovery it will be possible to connect this Department of Corrections policy with scores of deaths, hundreds of sexual assaults, and thousands of robberies and extortions throughout the Florida prison system. The power of the gangs and much of their economics is based on their ability to raid and pillage other housing areas, often with the assistance or acquiescence of dormitory officers, smash and grab (or as here, stab and grab) can be successful only if dorm officers don't see or don't care.

Other prison gang rackets that depend on access to unauthorized housing areas are things like distribution of drugs and other contraband, collection of debts, punishment of prisoners who are behind in their payments or who have gang enemies, tattooing, gambling, and meetings of gang leaders to plan other gang activities. Disabled inmates are frequently victims of many of these activities.

6

> **E. Plaintiffs Can Show through Discovery That Dorm Access to Gangs Is a Known Systemic Problem that Can Yield to Injunctive Relief.**

Although it would not be possible for a state agency or the head of that agency to be sued for damages under 42 U.S.C. § 1983, a plaintiff may seek injunctive relief against a state official in his or her official capacity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) (*citing Ex parte Young*, 209 U.S. 123, 159-60 (1908))." The Secretary of the Florida Department of Prisons is the proper party for a count seeking injunctive relief. *Lonergan v. Fla. Dep't of Corr.*, 623 F. App'x 990, 992 (11th Cir. 2015). Plaintiffs contend they can show through discovery that the problem is known and susceptible to solution.

Plaintiffs believe that their case has a strong potential for resulting in changes in the way prisons are managed to make them safer. A change in the policy that fails to hold corrections officers accountable for allowing inmates, including predatory gang members, to come and go in dorm areas where they don't live and are not authorized would be a first step. The institution throughout the prison system of the color-coded wrist bands that show at a glance whether an inmate is where he is supposed to be is another low-cost and intuitive policy change that would help tremendously. These changes in policy are narrowly-drawn and consistent with good public policy. The problem of retaliation against inmates who complain of predatory gangs and complicit corrections officials may be more intractable but strong employee discipline would be a start.

### F. Plaintiff's ADA/RA Claims Implicate the Protections of the Fourteenth Amendment within the Meaning of *United States v. Georgia.*

Defendant also claims Eleventh Amendment immunity with regard to Title II of the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA). Defendant Dixon misunderstands the requirement in *United States v. Georgia*, 546 U.S. 151, 159 (2006), that a violation of Title II of the ADA must correspond to the enforcement powers of the Fourteenth Amendment. *United States v. Georgia* simply stands for the proposition that an ADA violation must correspond to the scope of constitutional violations and not exceed their boundaries.

Defendants have not troubled to evaluate the panoply of Plaintiff's claims for their constitutional bases, simply proclaiming "Ford has not alleged a violation of his constitutional rights." (ECF 28 at 27). Plaintiff claims the right to protection, against cruel and unusual punishment, failure to protect (ECF 21 at para. 26), chilling of protected speech and redress of grievances (ECF 21 at para. 36b), equal protection of the laws (ECF 12 at para. 36e), and other rights guaranteed to citizens of the states under the Fourteenth Amendment. Plaintiff's claim on ADA/RA accommodations are well within constitutional bounds.[2]

---

[2] Defendant Dixon also misunderstands the meaning of the requirement to show that the "exclusion, denial of benefit, or discrimination was by reason of his disability." This refers to the effective reason, not the subjective reason. *Wright v. Hospital Authority of Houston County*, Civil Action No. 5:07-CV-281 (CAR), at *10-11 (M.D. Ga. Feb. 2, 2009) ("Unlike other types of discrimination claims, a "failure to accommodate" claim under the ADA does not require a showing of discriminatory intent. *Nadler v. Harvey*, 2007 WL 2404705 at *8."). So the quadriplegic prisoner does not have to show that he is being denied a wheelchair because prison

**G. Plaintiff Ford Is a Qualified Person with a Disability Who Could Benefit from the Department Housing Program with Suitable Accommodation.**

According to *Pennsylvania Dept. of Corr. v. Yeskey*, 524 U.S. 206, 209-10 (1998) Title II of the ADA qualifies a prison as a "public entity" that is prohibited from discriminating against a qualified individual with a disability. Congress intended that Title II of the ADA abrogate a state or state agency's Eleventh Amendment immunity. *United States v. Georgia*, 546 U.S. 151, 154 (2006). Where an ADA claim is brought against a state agency, official capacity defendants are proper parties. *Brown v. Georgia Department of Corrections*, No. 5:07-cv-79 (CAR), at *6 (M.D. Ga. Mar. 4, 2008). The Secretary, in his official capacity, is a proper party under the ADA. The claims are not personal to the Secretary because successor officials sued in their official capacity normally step into the shoes of their predecessors. *Hobbs v. Roberts*, 999 F.2d 1526, 1531 (11th Cir. 1993).

Plaintiff James Ford is a sight-impaired inmate who is a person with a disability and is regarded as such. The fact that Mr. Ford is not only sight-impaired but is so-regarded means he tends to be a target and his disability or being identified as disabled makes it difficult for him to do things that other inmates do – as here, to work-out in the common area of the dormitory – an activity that is available to other inmates but which can be hazardous to a physically disabled

officials hate quadriplegics (although that may also be true).

9

inmate when predatory gang members are roaming the dorm. His obvious and known disability makes him a target in the absence of staff protection.

### H. Plaintiffs Rely on the Court's Order of February 8, 2022 (ECF 23) Deeming the Summons and Complaint Timely Served

Federal Rule of Civil Procedure 4(m) provides that "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." This Court found good cause for the delay in service in the Magistrate's Order of February 8, 2022 (ECF 23). No timely objection was made to the Magistrate's Order under Fed.R.Civ.P. 72(b)(2).

Defendant also argues that in the Amended Complaint, the substitution of Secretary Ricky Dixon for the former Secretary Mark Inch, constituted a "new party" for whom there was no relation back under Fed.R.Civ.P. 15(c). Changes in a pleading "when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending" is not a change of parties under Fed.R.Civ.P. 15(c). Rather, in such cases, "[t]he officer's successor is automatically substituted as a party" under Fed.R.Civ.P. 25(d).

WHEREFORE, Plaintiffs ask that the Court DENY Defendant's Motion.

Respectfully submitted,   *s/ James V. Cook*
JAMES V. COOK, ESQ.
Florida Bar Number 0966843
Law Office of James Cook
314 West Jefferson Street
Tallahassee, Florida 32301
(850) 222-8080; 561-0836 fax
cookjv@gmail.com

ATTORNEY FOR PLAINTIFFS

I CERTIFY that the pertinent parts of this Memorandum do not exceed 2549 words.

I CERTIFY the foregoing was filed electronically on 3/14/22, serving counsel of record registered to be notified by the CM/ECF electronic filing system.

*/s/James V. Cook*

11