UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JAMES TERRELL FORD and
BOBBY GENE GRAHAM,

      Plaintiffs,

v.                              Case No. 3:21cv932-LC-HTC

RICKY DIXON, et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Before the Court is Defendant Secretary Ricky Dixon's ("Secretary Dixon") motion to dismiss Plaintiffs' amended complaint. ECF Doc. 28. Plaintiffs, James Terrell Ford and Bobby Gene Graham, sue Secretary Dixon, in his official capacity, under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act ("ADA"), and § 504 of the Rehabilitation Act.[1] ECF Doc. 21. Upon consideration of the motion, Plaintiffs' response in opposition, ECF Doc. 29, and relevant law, the undersigned respectfully recommends Secretary Dixon's motion be GRANTED, with leave to amend.

---

[1] As discussed herein, Plaintiffs have also sued two officers under the Eighth Amendment for failure to protect them from inmate attacks. ECF Docs. 24 and 25. Also, although both Ford and Graham initially asserted claims against the Secretary, Plaintiffs concede that Graham's claims for injunctive relief are moot because he has been released from prison.

# I.   BACKGROUND

Plaintiff Ford is a vision-impaired inmate of the Florida Department of Corrections ("FDOC") and Plaintiff Graham was Ford's ADA inmate assistant at Santa Rosa Correctional Institution ("SRCI"), where both were previously housed.[2] ECF Doc. 21.  The facts in Plaintiffs' amended complaint are accepted as true for the purposes of Secretary Dixon's motion to dismiss, and are summarized as follows:

On July 31, 2017, Ford, a vision-impaired inmate at SRCI was attacked and robbed by gang member inmates from another wing.  ECF Doc. 21 at 3-4.  Defendant Officer Joyner allowed these gang member inmates to enter Plaintiffs' dorm and watched while Plaintiff Ford was attacked, and then allowed the inmates to leave. *Id.* at 4.  These same inmates also attacked Graham, Ford's inmate ADA assistant. *Id*.  Officer Joyner was "one of the officers" who would let these gang members "go 'fishing' in unassigned areas to rob vulnerable inmates." *Id*.  After the attack, Ford told officers he fell down the stairs because he knew he had to make up a cover story or Officer Joyner would not allow him to go to medical. *Id.* at 5.

___

[2] According to the FDOC website, Plaintiff Ford is currently incarcerated at Blackwater Correctional Facility. *See* http://www.dc.state.fl.us/offenderSearch/detail.aspx?Page=Detail&DCNumber=304585&TypeSearch=AI.  Plaintiffs also represent Graham has been released from FDOC custody.

On September 6, 2017, Graham reported the incident to investigators, including that Defendant Sgt. Stephens threatened to kill Graham or place him back in confinement if he complained about Joyner. ECF Doc. 21 at 5. Graham also reported that Sgt. Stephens said Ford was going to be transferred to another institution far away from his family because "his family keeps calling about him." *Id.* Stephens told Graham they did not like "n---" and were "going to put someone in [his cell] to f---" him up for being a snitch. *Id.* at 6.

Ford also reported the incident to the Florida Department of Law Enforcement and told the FDLE the FDOC was "bouncing him from camp to camp, keeping him away from family support and making it hard to file and receive paperwork." *Id.*

Plaintiffs also allege the FDOC lacks sufficient policies to prevent or deter corrections officers from allowing inmates to enter housing areas they are not authorized to enter and have informal customs which allow vulnerable inmates to come under attack from other inmates and then be retaliated against by officers if they complain. Thus, Plaintiffs seek to hold the Secretary liable under the Eighth Amendment for failure to protect (Count One); under the First Amendment for retaliation (Count Two); and for violating the ADA and RA (Count Five). ECF Doc. 21. Plaintiffs seek declaratory and injunctive relief against Secretary Dixon as to Plaintiff's 1983 claims, and monetary damages as to the ADA and RA claims. *Id.*

The Secretary moves for dismissal on several grounds. First, he argues he should be dismissed pursuant to Fed. R. Civ. P. 4(m) because Plaintiffs did not serve him with process within ninety (90) days of the filing of the original complaint. ECF Doc. 28. Second, he moves to dismiss the Eighth and First Amendment claims because: (1) they are barred by the statute of limitations; (2) the Secretary is immune from liability under the Eleventh Amendment; and (3) Plaintiffs have failed to allege any facts to show that any violation of their constitutional rights was caused by an FDOC policy or custom. *Id*. Third, the Secretary moves to dismiss Ford's ADA and Rehabilitation Act claims, also as being barred by the Eleventh Amendment, and for failing to state a claim.

## II.    LEGAL STANDARD

When evaluating a motion to dismiss under Rule 12(b)(6) for failing to state a claim upon which relief can be granted the Court must determine if the plaintiff has alleged enough plausible facts to support the claim stated. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A complaint's well-pleaded facts must be accepted as true when ruling on a motion to dismiss, *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations." *Twombly*, 355 U.S. at 556 (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). "A motion to dismiss is not the vehicle by which the truth of a plaintiff's factual allegations should

be judged." *Newbold v. Santana*, 4:19CV26-WS/CAS, 2020 WL 853910, at \*4 (N.D. Fla. Jan. 8, 2020), *report and recommendation adopted*, 4:19CV26-WS/CAS, 2020 WL 838295 (N.D. Fla. Feb. 19, 2020).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (citation omitted). This "plausibility standard" requires a showing of "more than a sheer possibility" the Defendant is liable on the claim. *Id.* The allegations of the complaint must set forth enough facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## III. SERVICE

As to the Secretary's first ground for dismissal, the undersigned does not find dismissal to be warranted under Federal Rule of Civil Procedure 4(m). Under Rule 4 of the Federal Rules of Civil Procedure, a defendant must be served "within ninety (90) days after the complaint is filed," or the Court "on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specific time." Fed. R. Civ. P. 4(m). However, if the plaintiff shows "good cause" for failure to serve a defendant within

the 90 days the Court "must" extend the time for service for an appropriate period. *Id.* Even without "good cause," the Court *may* extend the deadline. *See Horenkamp v. Van Winkle and Co.*, 402 F.3d 1129, 1132 (11th Cir. 2005); *United States v. Goleno*, 2016 WL 9087257, at *1 (N.D. Fla. June 3, 2016).

As the Secretary acknowledges, ECF Doc. 28 at 4, n.1, this Court already ruled on this issue when it granted Plaintiffs' motion to deem the complaint and summons timely served. ECF Doc. 23. As discussed in that Order, the Court finds an extension of time to be appropriate in this case because Plaintiffs' claims would be barred by the statute of limitations if service is deemed untimely. *Id.* Because the Court's reasoning was discussed at length in that Order, the Court will not rehash it here, and understands the Secretary raises the issue again here for purposes of preserving it on appeal.

## IV.   STATUTE OF LIMITATIONS

As an extension of the Secretary's argument that he has not been timely served, Dixon argues that because the service of process on former Secretary Mark Inch was untimely, the amended complaint, which substitutes Dixon for Inch, does not relate back and, thus, the claims are barred by the 4-year statute of limitations. The Court disagrees.

As an initial matter, as set forth in Section III, *supra*, the Court finds service on Secretary Inch to be timely. Regardless, under Rule 25(d), when a public officer

is sued in his official capacity, the action continues against his successor once the officer ceases to hold office. Thus, "[t]he officer's successor is automatically substituted as a party," without the need for a formal amendment. Fed. R. Civ. P. 25(d); *Kentucky v. Graham,* 473 U.S. 159, 166 (1985) ("In an official-capacity action in federal court, death or replacement of the named official will result in automatic substitution of the official's successor in office.").

## V. PLAINTIFFS' EIGHTH AMENDMENT AND FIRST AMENDMENT CLAIMS.

Secretary Dixon seeks dismissal of Plaintiffs' constitutional claims on the grounds that they are barred by the Eleventh Amendment, and do not fall under the *Ex parte Young* exception.[3] Additionally, Secretary Dixon argues the allegations fail to state a claim for which relief can be granted. As discussed below, the undersigned agrees with the Secretary on both points.

### A. ELEVENTH AMENDMENT AND EX PARTE YOUNG

The Eleventh Amendment bars suits against any "arm of the state," including "agents and instrumentalities of the [s]tate." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc) (plurality opinion). However, "official-capacity actions for prospective relief are not treated as actions against the State." *Graham*, 473 U.S.

---

[3] The Secretary also argues the Secretary is not a "person" under section 1983. That argument, however, is irrelevant because Plaintiffs are not seeking monetary damages for the constitutional violations.

at 167, n.14 (citing *Ex parte Young,* 209 U.S. 123 (1908)). In *Ex parte Young*, the Supreme Court recognized a narrow exception to the general rule of state immunity to allow suits against a state official for prospective equitable relief to end a continuing violation of federal law. *See Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261 (1997) (recognizing continued validity of *Ex parte Young*); *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dept. of Health and Rehab. Services*, 225 F.3d 1208, 1219 (11th Cir. 2000).

"The availability of this doctrine turns, in the first place, on whether the plaintiff seeks retrospective or prospective relief." *Fla. Ass'n of Rehab. Facilities, Inc.,* 225 F.3d at 1219. "Prospective relief is designed to avoid future harm." *Luckey v. Harris*, 860 F.2d 1012, 1017 (11th Cir. 1988) (citing *Swifte & Co. v. United States*, 276 U.S. 311, 326 (1928). The Eleventh Amendment, therefore, generally does not bar the exercise of the judicial power of the United States where a plaintiff seeks to compel a state officer to comply with federal law. *Ex parte Young*, 209 U.S. at 158-59. "Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment." *Papasan v. Allain*, 478 U.S. 265, 277-78 (1986) (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)).

As the Supreme Court has explained: "*Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which the relief against the state official directly ends the violation of federal law as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or directly to meet third-party interests such as compensation." *Id.* at 277-78. Thus, a plaintiff may not use the doctrine to adjudicate the legality of past conduct. *See id.*

To determine whether the doctrine of *Ex parte Young* applies, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (citations omitted). "The court need not look to the merits of the suit to determine whether *Young* applies; an allegation in the complaint will suffice." *Henderson v. Thomas*, 891 F. Supp. 2d 1296, 1313 (M.D. Ala. 2012) (finding plaintiffs "alleged an ongoing violation of federal law" where plaintiffs alleged "Defendants *are violating* Plaintiffs' rights under Title II of the ADA and Section 504 of the Rehabilitation Act") (emphasis in original).

In the motion, the Secretary argues "Plaintiffs' allegations are insufficient to invoke the *Ex Parte Young* exception to Eleventh Amendment immunity and thus,

Plaintiffs cannot bring a claim for injunctive relief against Secretary Dixon." ECF Doc. 28 at 19. In response, Plaintiffs assert their claims fall squarely into the *Ex Parte Young* exception because "[t]he circumstances pled have not abated and the threat of harm continues." ECF Doc. 29 at 4.

Applying the "straightforward inquiry," and considering the motion to dismiss standards, the Court finds Plaintiffs' allegations are not sufficient to fall within the *Ex parte Young* exception. Although "ordinarily, an *allegation* of an ongoing violation of federal law will be sufficient to warrant the *Ex parte Young* exception…. A bare assertion of a violation of federal law is not enough, though." *See Rowan Ct. Subdivision 2013 Ltd. P'ship v. Louisiana Hous. Corp.,* 749 F. App'x 234, 237 (5th Cir. 2018) (citing *Hall v. Tex. Comm'n on Law Enf't.*, 685 F. App'x 337, 341 (5th Cir. 2017) (per curiam) (concluding that failure to raise "a colorable constitutional claim" meant that the *Ex parte Young* exception did not apply)) (internal citations omitted). Bare assertions, however, are all Ford has alleged against the Secretary.

As discussed below, Plaintiffs' allegations that the Secretary has engaged in, and continues to engage in, a constitutional violation are purely conclusory and devoid of any supporting facts. For example, while Plaintiffs allege that "before and since" the July 31, 2017 incident, "Defendants have cooperated to permit" a host of wrongful conduct, including "officer-assisted inmate on inmate assaults," ECF Doc. 21 at 8, Plaintiffs fail to cite to a single other incident of assault or robbery involving

Plaintiffs either before or after the 2017 incident, any such incident occurring at Ford's new institution, or any other incident involving disabled inmates. Thus, "[t]here is no reason to believe that such conduct, even assuming, arguendo, that [it] amounted to a constitutional violation, will repeat in the future." *Surina v. S. River Bd. of Educ.,* 2022 WL 264464, at *3 (3d Cir. Jan. 27, 2022) (finding bare and conclusory allegations insufficient to meet *Ex parte Young* exception); *Pierre v. New York State Dep't of Corr. Servs.*, 2009 WL 1583475, at *18 (S.D.N.Y. June 1, 2009) (finding that an isolated incident of alleged disability discrimination, in conjunction with conclusory language requesting unspecified injunctive relief is insufficient for purposes of *Ex Parte Young*).

Several courts have held that conclusory allegations or requests for injunctive relief are not sufficient to benefit from the *Ex parte Young* exception. *See e.g., Salinas v. Tex. Workforce Comm'n*, 573 F. App'x 370, 372 (5th Cir. 2014) (per curiam) ("Conclusory statements are insufficient to plead a claim, and they do not establish jurisdiction under the *Ex Parte Young* exception."); *Izmirligil v. Whelan,* 2015 WL 5024642, at *3 (E.D.N.Y. Aug. 25, 2015), *aff'd,* 668 F. App'x 389 (2d Cir. 2016) ("The complaint contains only bare, conclusory allegations that the waiver interferes or will interfere with Izmirligil's due process and equal protection rights and that it discriminates against him based upon his national origin or religion and fails to allege a plausible ongoing violation of federal law and, consequently, the *Ex*

*parte Young* exception does not apply."); *Hall v. Texas Comm'n on L. Enf't,* 2016 WL 5417209, at *3 (E.D. Tex. Aug. 16, 2016) ("Conclusory statements by Plaintiff that Defendants are enforcing a policy that violates due process are insufficient to invoke the *Ex parte Young* exception and establish jurisdiction."), *report and recommendation adopted,* No. 6:15-CV-803, 2016 WL 5369498 (E.D. Tex. Sept. 26, 2016), *aff'd,* 685 F. App'x 337 (5th Cir. 2017);

The Court, therefore, agrees with the Secretary that Ford's allegations are insufficient to meet the *Ex parte Young* exception.

B.   FAILURE TO STATE A CLAIM UNDER THE EIGHTH AMENDMENT OR FIRST AMENDMENT

Secretary Dixon also moves to dismiss Count One (failure to protect) and Count Two (retaliation claim) for failing to state a claim. Namely, the Secretary argues that to impose liability on Dixon, Ford must allege a FDOC policy or custom was the motivating force behind the alleged constitutional violations, which he has not done.

It is well settled that a public official "is not liable under § 1983, merely as a matter of respondeat superior, for constitutional injuries inflicted by its employees." *Brown v. Neumann*, 188 F.3d 1289 (11th Cir. 1999) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978)). Instead, to impose liability on the Secretary, Plaintiffs must allege facts sufficient to show the FDOC had a policy or

custom, which was the 'moving force' behind the alleged constitutional violation. *Graham*, 473 U.S. at 166; *see also Palmer v. Sergeant Gjerde*, 2011 WL 250406, \*5 (M.D. Fla. Jan. 26, 2011). "Specifically, the [FDOC] 'policy or custom' must have played a part in the violation of the federal law." *Palmer v. Johnson*, 2012 WL 380112, \*13 (M.D. Fla. Feb. 6, 2012) (quoting *Graham*, 473 U.S. at 166).

"A policy is a decision that is officially adopted by the [government body], or created by an official of such rank that he or she could be said to be acting on behalf of the municipality. . .." *Wayne v. Jarvis,* 197 F.3d 1098, 1105 (11th Cir. 1999) (quoting *Sewell v. Town of Lake Hamilton,* 117 F.3d 488, 489 (11th Cir. 1997)). However, such policies need not be officially promulgated, but may be merely "customs" which have "not received formal approval through the [government body's] official decisionmaking channels." *Monell*, 436 U.S. at 691. A "custom" is a "practice that is so settled and permanent that it takes on the force of law." *Brown v. City of Ft. Lauderdale,* 923 F.2d 1474, 1481 (11th Cir. 1991). Also, "[t]o establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice." *Depew v. City of St. Marys, Georgia*, 787 F.2d 1496, 1499 (11th Cir. 1986).

Furthermore, in cases alleging "inaction," a custom arises where the entity fails to correct "the constitutionally offensive actions of its employees" and instead "tacitly authorizes" or "displays deliberate indifference towards the misconduct."

*Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001). Importantly, the entity must have actual or constructive knowledge of the widespread unconstitutional practice to form a custom of indifference, and "random acts or isolated incidents are insufficient." *Depew*, 787 F.2d at 1499.

Thus, to plausibly state a § 1983 claim against the Secretary based on deliberate indifference to widespread abuse, Plaintiff Ford must sufficiently allege: (1) the existence of a widespread and persistent pattern of abuse by the correctional officers; (2) that the Secretary/FDOC had actual or constructive knowledge of the abuse; (3) that the Secretary/FDOC tacitly approved or deliberately ignored the abuse, such that their inaction became a custom; and (4) that the Secretary's custom of inaction through deliberate indifference was a "moving force" behind the constitutional violations. *See N.R. by Ragan v. Sch. Bd. of Okaloosa Cty., Fla.*, 418 F. Supp. 3d 957, 991 (N.D. Fla. 2019) (finding Plaintiffs' allegation that the School Board had an unofficial custom of deliberate indifference and failure to respond to abuse by teachers, including disciplining employees in reporting child abuse to prevent violation of the constitutional rights of students).

Plaintiff Ford alleges the July 2017 incident was caused by certain customs and policies or the lack of appropriate policies. Those customs include the following:

a. [FDOC] has an informal custom to permit corrections officers to cooperate with gang members and other predatory inmates to enable criminal activities and allow them to move freely throughout the housing areas.

b. [FDOC] has an informal custom to limit investigations and destroy or hide evidence to frustrate honest and complete investigation sustained by mid-level investigative staff despite any efforts of top leadership.

c. [FDOC] has an informal custom to use threats of physical violence and actual physical violence by corrections staff and mercenary inmates to dissuade inmates from testifying truthfully about constitutional abuses.

d. [FDOC] has an informal custom of labeling inmates who complain about corruption and abuse as "snitches" and subject them to retribution by gangs and predatory inmates who are invested in the culture of abuse.

e. [FDOC] has an informal custom of calling ahead to institutions where troublesome inmates are transferred to ensure that the campaign of threats and violence continues from camp to camp.

f. [FDOC] has an informal custom of ignoring severe racial prejudice among prison staff and has not made significant efforts to eliminate the effects of such prejudice or counter the encroachment of Klan activity among staff.

ECF Doc. 21 at 9-12. The Secretary admits "Plaintiff make[s] reference to vague, informal customs," but contends Plaintiff's allegations fall short. ECF Doc. 28 at 22. Based on the Court's review of the allegations, the Court agrees with the Secretary.

While Plaintiff Ford alleges the existence of these "informal customs," he provides no facts showing the existence of widespread and persistent abuse of vulnerable inmates; no facts showing the Secretary had actual or constructive knowledge of any such abuse; and no facts showing the Secretary tacitly approved of any such abuse. Instead, all the facts alleged relate to a single incident – the June 2017 incident, which is insufficient to support the existence of a custom or policy and insufficient to show the Secretary had notice of what Plaintiffs allege was going on. *See e.g., Lordeus v. Miami-Dade Cnty*., 263 F. Supp. 3d 1307, 1311 (S.D. Fla. 2017) ("Plaintiff's only factual allegations are related to the incident in which he was involved, which falls markedly short of establishing the existence of an official policy or widespread custom."); *Depew v. City of St. Marys Ga.,* 787 F.2d 1496, 1499 (11th Cir. 1986) ("Normally random acts or isolated incidents are insufficient to establish a custom or policy.").

As stated above in Section V, *supra*, there are no facts showing the occurrence of other incidents either prior to or after the June 2017 incident. Neither Plaintiff, for example, complains of other similar attacks to themselves or point to any such similar incidents involving others. Likewise, the amended complaint is devoid of any facts showing that the June 2017 incident (if it occurred as Plaintiffs allege), resulted from anything other than the bad conduct by two officers, Defendants Joyner and Stephens. In other words, Plaintiffs have alleged no facts showing that

what occurred in June 2017 was not an isolated incident. *See Reyes v City of Miami Beach*, 2007 WL 4199606, at *5-6 (S.D. Fla. 2007) ("In recounting only their own alleged incident, offering no other facts to support their claim that the City had an official policy or widespread custom that was directly responsible for their injuries … Plaintiffs have failed to raise their section 1983 claim against the City above the speculative level.").

Similarly, Plaintiff Ford's conclusory allegations that informal customs exist are not sufficient, even under the Rules' notice pleading requirements, to state a claim under § 1983. *See Lordeus,* 263 F. Supp. 3d at 1311. "[T]he simple mention of a policy and/or custom is not enough, for a plaintiff must do something more than simply allege that such an official policy exists." *Perez v. Metro. Dade Cnty.*, 06–20341, 2006 WL 4056997, at *2 (S.D. Fla. Apr. 28, 2006) (internal citations omitted)). Indeed, Ford's attempt to pluralize the incident is not based on the existence of other incidents but appears to be based on speculation that other incidents likely exist. *See McDowell v. Brown*, 392 F.3d 1283, 1290-1291 (11th Cir. 2004), ("[w]hile McDowell's case is tragic, he cannot point to another occasion when the Jail's understaffing, and resulting inability to transport, contributed to or exacerbated an inmate's medical condition."). As the *McDowell* court stated, "this isolated incident, however unfortunate, does not demonstrate evidence of the County's 'persistent' or 'widespread' policy." *Id.*

Tellingly, in Ford's response to the motion to dismiss, he appears to admit that he has no such facts regarding other incidents. Instead, he "believe[s] with vigorous discovery" such facts may be obtained or learned. ECF Doc. 29 at 6. Plaintiff, however, cannot allege a municipal liability claim hoping that discovery will reveal facts to support the claim. *Curney v. City of Highland Park,* 2012 WL 1079473, at *5 (E.D. Mich. Mar. 30, 2012). Courts have consistently declined to allow a plaintiff to engage in such "fishing expeditions." *See e.g., Rigas v. City of Rogersville*, *Ala*., 2013 WL 444379, at *5 (N.D. Ala. Jan. 31, 2013) (dismissing municipal liability claims over Plaintiff's request that he "be allowed the opportunity to conduct discovery on his claims" and stating "the court will not indulge a fishing expedition"); *Mitchell v. City of Warren*, 2016 WL 3137846, *6-7 (E.D. Mich. June 6, 2016) (dismissing municipal defendants based on conclusory allegations of a custom or policy and stating that after *Twombly* and *Iqbal,* "it is no longer permissible for a party to use the discovery process to obtain [the facts it needs to support its claim] after filing suit.") (citation omitted).

As one court stated, "[l]itigation before the Court is not an opportunity to engage in a fishing expedition…." *McBrearty v Kappeler*, 2017 WL 1217171, at *3 (E.D. Ky. March 31, 2017) ("Plaintiff cannot defeat Defendants' motion to dismiss by claiming that she needs discovery with respect to customs and practices of

Defendants"). Simply put, Plaintiff must have a factual basis to support his claims against the Secretary and cannot seek to obtain those facts through discovery.

Finally, while Plaintiff expanded on his allegations in his response, including alleging that staff "pop the door" open to admit inmates in residential areas and cannot keep track of who lives where because of staff shortages, the Court cannot consider allegations that are not within the four corners of the amended complaint. *See Grier v. State of Fla.,* 2005 WL 1073932, at *2 (M.D. Fla. Apr. 18, 2005) ("And while Plaintiff has expanded greatly on his arguments and the case law supporting them in his Responses, the Court can only look to the four corners of the complaint in adjudging a motion to dismiss.").

Thus, the undersigned finds Ford has failed to state a claim against the Secretary for either failure to protect or retaliation and recommends the Secretary's motion be GRANTED.

## VI.    FORD'S TITLE II ADA AND REHABILITATION ACT CLAIMS

As with the constitutional claims, Secretary Dixon also seeks dismissal of the ADA and Rehabilitation Act claims against him as being barred by the Eleventh Amendment and failing to state a claim.  For the reasons discussed below, the undersigned finds Ford's Rehabilitation Act claim is not barred by the Eleventh Amendment but agrees with the Secretary that Plaintiff has failed to state a claim

under the ADA or Rehabilitation Act. Thus, the undersigned recommends these claims also be dismissed.

A.    ELEVENTH AMENDMENT IMMUNITY

As an initial matter, the Eleventh Amendment immunity does not apply to claims under the Rehabilitation Act because Plaintiff alleges the FDOC receives federal funding. *See Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.,* 344 F.3d 1288, 1293 (11th Cir. 2003); *Arenas v. Georgia Dep't of Corr.*, 2018 WL 988099, at *9 (S.D. Ga. Feb. 20, 2018) (finding Defendants' immunity argument as to Rehabilitation Act claim as "border[ing] upon a frivolous attempt to mislead this Court into error"). By accepting federal funding, the State waived its sovereign immunity. *Id.*; 42 U.S.C.A. § 2000d-7 (West). Likewise, plaintiffs may pursue injunctive relief from state officials for violations of the ADA. *See Nat'l Assoc. of the Deaf v. Florida*, 980 F.3d 763, 774 (11th Cir. 2020). Thus, the only question is whether there has been a waiver of immunity for claims under the ADA seeking monetary damages. *United States v. Georgia*, 546 U.S. 151, 155-160 (2006).

In *United States v. Georgia,* the Supreme Court considered whether a state prisoner could sue a state for money damages based on a claim that the conditions of his confinement violated his rights under Title II of the ADA. *Id*. at 153-55. Declining to determine whether Title II validly abrogated sovereign immunity in prisoner suits generally, the Court, instead, held that "insofar as Title II creates a

private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Id*. at 159; *see also Black v. Wigington*, 811 F.3d 1259, 1269 (11th Cir. 2016). "If Plaintiff meets this standard, the Eleventh Amendment will not bar his ADA claim." *White v. Fla. Dep't of Corrs.*, 2019 WL 13087818, at *2 (N.D. Fla. Oct. 10, 2019).

If the conduct alleged to have resulted in an ADA violation, however, does not actually violate the Constitution itself, then Eleventh Circuit case law suggests there is no valid abrogation of the sovereign immunity. *Redding v. Georgia*, 557 F. App'x 840, 845 (11th Cir. 2014) ("Redding's allegations did not show that the defendants' conduct violated Redding's constitutional rights, so they were entitled to Eleventh Amendment immunity against his ADA claims."); *Siskos v. Secretary*, No. 19-10799, 2020 WL 2988850, at *4 (11th Cir. June 4, 2020). Thus, Ford's claims under the ADA require an actual constitutional violation for him to recover monetary damages.

As discussed above in Section V., *supra*, however, neither Ford's Eighth Amendment nor First Amendment claims against the Secretary pass 12(b)(6) muster. Thus, as currently drafted, Ford's claim for monetary relief under the ADA is barred by the State's sovereign immunity. This determination, however, is purely academic because the RA claims are not barred. *Bennet-Nelson v. La. Bd. of Regents*, 431

F.3d 448, 455 (5th Cir. 2005) ("[H]aving already held that sovereign immunity does not bar the appellants' claim under [the RA], we need not address at this juncture the issue of abrogation under Title II of the ADA, because the rights and remedies under either are the same for purposes of this case.").

## B. FAILURE TO STATE A CLAIM UNDER THE ADA OR RA

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1081 (11th Cir. 2007). A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable modifications ... or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). Likewise, Section 504 of the Rehabilitation Act states:

> No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794(a); *R.W. v. Bd. of Regents of the Univ. Sys. of Ga.*, 114 F. Supp. 3d 1260, 1282 (N.D. Ga. 2015).

Title II of the ADA has been held to apply to a disabled prisoner where he is denied participation in an activity or program provided in a state prison due to his disability. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 211, 213 (1998); *Grayson v. Ivey*, 2020 WL 4201194, at *2–3 (M.D. Ga. July 22, 2020). An ADA claim may proceed on the theory that the Defendant failed to reasonably accommodate the Plaintiff's disability. *See Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008).

Here, while Ford attempts to frame his claims as an ADA or Rehabilitation Act claim, he has not alleged any facts in the amended complaint sufficient to show he has been excluded from participating in or has been denied the benefits of any service, or has been discriminated against. Instead, in Ford's response, he argues, for the first time, that Ford cannot do things other inmates can do, such as work out in the common area of the dormitory. ECF Doc. 29 at 9. Once again, Plaintiff cannot amend his complaint through a response. Regardless, the fact that Ford cannot work out in the common area has nothing to do with the requests for relief Plaintiff seeks here. Moreover, it would seem that if Plaintiff's theory is that correctional officers are helping gang inmates look for easy targets, the easiest target would be empty dorms, rather than ones that an inmate cannot leave.

Likewise, Ford's theory of the case is undermined by the fact that he has a disability inmate assistant. While Ford may be more vulnerable to attack by other

inmates because he is visually impaired, Plaintiff Graham is not. The presence of Graham puts Ford in a similar, if not better, position than an inmate who can see.

Indeed, a review of the relief sought by Ford shows that the incident he complains of is not isolated to disabled inmates. For example, Ford's allegation that the institution should use color bands to designate housing assignments is relief that would benefit all inmates. Similarly, the informal customs complained of, such as not disciplining corrections officers, are ones that would also affect all inmates, not just ones with disabilities. In other words, even if Plaintiff Ford is correct that officers allow inmates to rob other inmates by giving them access to areas they would not otherwise be allowed in, there are no facts showing such conduct occurs only with regard to disabled inmates. While it is true that disabled inmates may be easier targets and are more vulnerable, there are likely other inmates who would also be considered easier targets, such as ones that are less aggressive, smaller in stature, or are compromised in some other way that does not make them a "qualified individual with a disability."

The undersigned, therefore, finds Ford has failed to allege facts sufficient to show that he was denied a benefit or service or was discriminated against because of a disability.[4] Thus, Ford's ADA and Rehabilitation Act claims should also be

---

[4] Furthermore, "[t]o get damages [under the ADA or Rehabilitation Act] a plaintiff must clear an additional hurdle: he must prove that the entity that he has sued engaged in intentional

dismissed. If Ford discovers additional facts to support a claim against Dixon (under the ADA, Rehabilitation Act, or Constitution), he can move to amend his complaint at a later date, assuming he meets the standards set forth in Federal Rule of Civil Procedure 15.

Accordingly, it is respectfully RECOMMENDED that:

1. Defendant Dixon's Motion to Dismiss (ECF Doc. 28) be GRANTED.

2. Defendant Dixon be terminated as a defendant in this action.

3. The case be remanded to the undersigned for further proceedings.

At Pensacola, Florida, this 17th day of May, 2022.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

---

discrimination, which requires a showing of 'deliberate indifference.'" *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019) (citation omitted). Thus, even assuming Plaintiff Ford could show he suffered discrimination at SRCI due to his disability, he could not recover monetary damages under the ADA or Rehabilitation Act because: (1) as discussed in Section V, *supra*, he has not alleged facts showing the Secretary had actual knowledge of discrimination in the FDOC's facilities and failed adequately to respond; and (2) the Secretary is not vicariously liable for the actions of his employees. *See Ingram v. Kubik*, 30 F.4th 1241, 1256-59 (11th Cir. 2022).

## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days of the date of this report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> A copy of objections shall be served upon the Magistrate Judge and all other parties. A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.